UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GEORGETTE SORRELL, JUANA ROSARIO,
MACHEL WILLIAMS, and DONALD MORENCY,

                              Plaintiffs,                    **MEMORANDUM AND ORDER**
                                                      10 CV 49 (DRH) (GRB)

                - against -

THE INCORPORATED VILLAGE OF
LYNBROOK, LYNBROOK POLICE DEPARTMENT,
and POLICE OFFICERS JOHN DOE 1-10 in their
official and individual capacities

                              Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

**Attorneys for Plaintiffs**

**LAW OFFICES OF FREDERICK K. BREWINGTON**
556 Peninsula Boulevard
Hempstead, New York 11550
By:    Frederick K. Brewington, Esq.

**Attorneys for Defendants**

**SILER & INGBER, LLP**
1399 Franklin Avenue
Suite 103
Garden City, New York 11530
By: William A. Ruskin, Esq.
    Victoria Sloan, Esq.

**HURLEY, Senior District Judge:**

       Plaintiffs Georgette Sorrell, Juana Rosario, Machel Williams, and Donald Morency

commenced this action on January 6, 2010 asserting claims against defendants pursuant to 42

U.S.C. §§ 1983 and 1985, as well as New York common law, to recover for damages they

allegedly sustained in connection with their arrest on October 11, 2008.  Discovery in this action

closed on July 12, 2012.  Presently before the Court is plaintiffs' motion, made pursuant to Federal Rule of Civil Procedure 15(a), seeking to amend the Complaint to: (1) substitute "Police Officer John Does 1-10" with Lynbrook Police Officers Patrick J. Hahl, Peter R. Festa, Brian Paladino, Brian Cunningham, and Eric Bruen, and (2) to add the County of Nassau, Nassau County Police Department, Nassau County Detectives Robert J. Lashinsky and Greg M. Arena, and Nassau County Police Officer Marissa D. Stork as defendants.  For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

## *BACKGROUND*

The following facts are taken from the proposed Amended Complaint ("Am. Compl.") (*see* Decl. of Marjorie Mesidor, dated July 12, 2010 ("Mesidor Decl."), Ex. A), and are presumed true for purposes of this motion.

### *The Parties*

Plaintiffs are African-Americans who reside in Suffolk County, New York.  (Am. Compl. ¶ 5.)  Defendants Patrick J. Hahl, Peter R. Festa, Brian Paladino, Brian Cunningham, and Eric Bruen (the "Lynbrook Police Officers") were employed at all relevant times as Police Officers in the Lynbrook Police Department, which is described as a "legal subdivision and agency of" the Incorporated Village of Lynbrook (the "Village").  (*Id.* ¶ 9.)

At all relevant times, defendant Marissa D. Stork served as a Police Officer with the Nassau County Police Department, and Greg M. Arena and Robert J. Lashinsky worked as Detectives with the Nassau County Police Department.  The Amended Complaint describes the Nassau County Police Department as "a legal subdivision and agency" of Nassau County (the "County").  (*Id.* ¶ 8.)

*Plaintiffs' Arrest*

On or about October 11, 2008 at approximately 9:00 p.m., Sorrell drove a white 1994 four-door Honda Accord south on Peninsula Boulevard in Lynbrook, New York.  Morency, Williams, and Rosario were passengers in the vehicle.  The Lynbrook Police Officers stopped the vehicle and informed Sorrell that "the vehicle she was driving fit the description of a similar vehicle involved in a criminal incident that night."  (*Id.* ¶ 17.)  Plaintiffs assert that they were "improperly profiled" by the Lynbrook Police Officers, who "assumed" that they had engaged in criminal activity "simply because Plaintiffs were African American."  (*Id.* ¶ 18.)

Subsequently, Arena and Lashinsky arrived at the scene.  After approximately two hours had passed, plaintiffs were ordered out of the car "and told to stand in a line, as a police cruiser carrying two individuals in the backseat, slowly drove by."  (*Id.* ¶ 20.)  Shortly thereafter, the Lynbrook Police Officers handcuffed plaintiffs and told them that "everything would be resolved at the Precinct."  (*Id.* ¶ 21.)  The Lynbrook Police Officers, Arena, and Lashinsky then searched Sorrell's car.  (*Id.*)

*Plaintiffs are Taken to the Fifth Precinct*

Plaintiffs were taken to the Fifth Precinct,[1] placed in separate rooms, and "interrogated." (*Id.* ¶ 23.)  The Lynbrook Police Officers, Arena, Lashinsky, and Stork searched the contents of plaintiffs' cell phones and took a series of Polaroid photographs of plaintiffs as well as the items collected from them.  While doing so, defendants "ridiculed" plaintiffs and refused to give plaintiffs a reason for their detainment.  Plaintiffs also assert that Sorrell's car was searched

---

[1]     Although the Amended Complaint does not specify, the Court presumes that "the Fifth Precinct" refers to a precinct of the Nassau County Police Department.

"several times" throughout the night, and that it was "vandalized."  (*Id.* ¶ 27.)

Plaintiffs allege that Stork conducted an unlawful strip search of Sorrell and Rosario, and that Sorrell and Rosario were not permitted to use the bathroom.  Plaintiffs also assert that Williams was strip searched in a separate bathroom.

### *Plaintiffs are Released and the Charges Against Them are Ultimately Dropped*

Overall, plaintiffs were interrogated for approximately 12 hours and then were taken to "headquarters," where they spent an additional 24 hours.  (*Id.* ¶ 30.)  Plaintiffs were not arraigned until October 13, 2008.  Sorrell was released on $5,000 bail and Rosario was released on her own recognizance.  Morency, who had been home on a work release program furlough, was remanded.  Williams was unable to make bail and was held for nine days at the Nassau County Correctional Facility.

Plaintiffs allege that Arena and Lashinsky "actively instigated and encouraged [their] baseless prosecution" for robbery.  (*Id.* ¶ 32.)  Plaintiffs were charged with, and indicted on, a count of Robbery in the Second Degree, a Class C Felony.  (*Id.* ¶ 32.)  Plaintiffs contend that their indictments were "based primarily on the testimony of [Hahl and Lashinsky] as complaining witnesses."  (*Id.* ¶ 33.)  Plaintiffs assert that the Lynbrook Police Officers "conducted a show up" at the time that Sorrell's vehicle was stopped, and that the show up "was suggestive in that the victim was asked to identify four individuals surrounded by police as the perpetrators."  (*Id.* ¶ 34.)  Moreover, plaintiffs assert that during the show up, "the female victim" identified only Sorrell, Rosario, and Williams, but did not identify Morency.  According to plaintiffs, Lashinsky and Arena "proceeded to do a photo pack with the male victim."  (*Id.* ¶ 36.)  Again, Morency was not identified.  Nonetheless, Morency was "kept under unlawful arrest."  (*Id.*)

The charges against plaintiffs were ultimately dropped on January 27, 2009.  In the "Dismissal Memo," the Assistant District Attorney noted that plaintiffs' descriptions did not match the descriptions of the suspects that were given to the Lynbrook PD and was broadcast over the radio on the night of the robbery.  (*Id.* ¶¶ 37, 38.)  According to plaintiffs, despite the "glaring factual differences" between the suspects' and plaintiffs' descriptions, and despite the fact that the victims did not identify Morency during either the show up or the photo pack, the defendants detained and arrested the plaintiffs.  (*Id.* ¶ 38.)  Video surveillance later obtained by plaintiffs' criminal counsel showed that plaintiffs had stopped at a gas station approximately 40 miles from the scene of the crime at the time the robbery occurred, which made it "factually impossible" for plaintiffs to have committed the robbery at all.  (*Id.* ¶ 41.)

**The Causes of Action**

In the Amended Complaint, plaintiffs assert Fourth and Fourteenth Amendment claims, pursuant to 42 U.S.C. § 1983 ("Section 1983"), for false arrest, excessive force, and malicious prosecution.  Plaintiffs have also brought conspiracy claims under 42 U.S.C. § 1985 ("Section 1985"), and state law claims for assault, battery, intentional infliction of emotional distress, false imprisonment, and malicious prosecution.

## DISCUSSION

**I.    Legal Standard**

Plaintiffs' motion, which seeks to substitute "Police Officers John Doe 1–10" with the Lynbrook Police Officers and to add the Nassau County Defendants, is governed by Rules 15 and 21 of the Federal Rules of Civil Procedure.  Under Rule 15(a), the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a); *AEP Energy Servs.*

*Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010).  Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  "Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule."  *Clarke v. Fonix Corp.*, 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999) (internal quotation marks omitted), *aff'd*, 199 F.3d 1321 (2d Cir. 1999) (unpublished).

"[L]eave to amend a complaint to assert claims against additional defendants 'should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court."  *Bernhard v. Central Parking Sys. of N.Y., Inc.*, 2012 WL 1344720, at *2 (E.D.N.Y. Apr. 18, 2012) (quoting *DeFazio v. Wallis*, 2006 WL 4005577, at *1 (E.D.N.Y. Dec. 9, 2006)).

## II.    Plaintiffs' Request to Substitute the Lynbrook Police Officers for the "Police Officers John Doe 1–10" is Granted

### A.    The Parties' Contentions

Plaintiffs assert that they learned the identities of the "Police Officers John Doe 1–10" "after a review of Depositions and the District Attorney's Report turned over to Plaintiff[s] during the normal course of discovery."  (Pls.' Mem. at 7.)  According to plaintiffs, this information has been "in the exclusive possession of Defendants [since] the commencement of the [ ] lawsuit" and, as such, defendants will suffer no prejudice from plaintiffs' proposed amendment.  (*Id.* at 8.)  Plaintiffs further contend that because they do not intend to "assert any additional causes of action" (*id.*), defendants will not be required to "expend any additional resources to conduct discovery."  (*Id.* at 9.)

6

In opposition, the Lynbrook Defendants argue that "it would be futile to allow the Plaintiffs to raise allegations against the [ ] individual Lynbrook Police Officers when the completed record already demonstrates that these allegations are at best unestablished, and at worst completely untrue."  (Opp'n Mem. at 1-2.)  Plaintiffs counter that, by focusing on the record evidence and not the allegations contained in the Proposed Amended Complaint, the Lynbrook Defendants are improperly attempting "to convert this motion into a Summary Judgment motion."  (Reply Mem. at 4.)

### B.     The Appropriate Standard for Determining Futility

 The Second Circuit has clearly articulated the standard applicable to a determination of whether leave to amend should be denied on the basis of futility: "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)); *see also Crippen v. Town of Hempstead*, 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009) ("[T]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b)(6) motion to dismiss – namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted.").  Thus, the Court's focus must rest on the pleadings.  *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

The Second Circuit has determined that "the rule is different where . . . [a] cross-motion [to amend the complaint] is made in response to a Fed.R.Civ.P. 56 motion for summary judgment, and the parties have fully briefed the issue whether the proposed amended complaint

could raise a genuine issue of fact and have presented all relevant evidence in support of their positions." *Milanese*, 244 F.3d at 110.  In that case, "even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c)." *Id.*

Here, of course, plaintiffs' motion to amend was not made in response to any motion for summary judgment.  Furthermore, the parties have not "fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have [not] presented all relevant evidence in support of their positions." *See id.*[2]  Accordingly, any question as to the futility of plaintiffs' claims against the Lynbrook Police Officers must arise from the allegations set forth in the Proposed Amended Complaint, and must be tested under the standard applicable to a Rule 12(b)(6) motion.

The Lynbrook Defendants have not raised any issue with the sufficiency of plaintiffs' claims against the Lynbrook Police Officers as pled in the Proposed Amended Complaint, and the Court declines to undertake any substantive review of those allegations *sua sponte*. Moreover, the Lynbrook Defendants have failed to make any showing of undue delay or bad faith on plaintiffs' part.  Finally, the Lynbrook Defendants have made no showing that they would

---

[2]      The Lynbrook Defendants assert that the record evidence demonstrates that certain of plaintiffs' allegations lack a factual basis.  For instance, the Lynbrook Defendants claim that plaintiffs failed to provide any evidence in the form of deposition testimony that would support their allegations regarding the searches of Sorrell's car and plaintiffs' cell phones. (Opp'n Mem. at 2-3.)  As plaintiffs point out in their reply brief, however, the deposition testimony cited by the Lynbrook Defendants reveals that plaintiffs were never actually questioned on these topics.  (*See, e.g.,* Lynbrook Defs.' Ex. A at 36-38.)  A lack of deposition testimony on these points is, therefore, unsurprising and hardly evidences the absence of genuine questions of material fact.

suffer prejudice as a result of the proposed amendment, particularly since discovery has closed

and plaintiffs have represented that they do not wish to undertake any further discovery.  *See*

*Bernhard*, 2012 WL 1344720 at *8 (finding no undue prejudice to party opposing amendment

when plaintiff sought only to substitute named individual defendants for John Does and

"Defendants were aware of these claims from the outset and thus it is likely that additional

discovery would not even be necessary").

Accordingly, plaintiffs' motion to amend the Complaint to substitute "Police Officers

John Doe 1-10" with Patrick J. Hahl, Peter R. Festa, Brian Paladino, Brian Cunningham, and

Eric Bruen[3] is granted.

### III.   *Plaintiffs' Request to add the Nassau County Defendants is Granted in Part and Denied in Part*

#### A.   *Plaintiffs' Claims Against the Nassau County Police Department are Futile*

It is well-settled that "'under New York law, departments that are merely administrative

arms of a municipality do not have a legal identity separate and apart from the municipality and,

therefore, cannot sue or be sued.'" *Jackson v. County of Nassau*, 2010 WL 335581, at *5

(E.D.N.Y. Jan. 22, 2010) (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477

(E.D.N.Y. 2002)).  Plaintiffs' claims against the Nassau County Police Department are, therefore,

"more properly raised in claims against Nassau County."  *See id.*  Because plaintiffs have also

named Nassau County as a defendant for each of their claims, the causes of action asserted

---

[3]     Plaintiffs' Proposed Amended Complaint and motion papers do not include a request to add Eric Bruen.  In their reply memorandum, however, plaintiffs assert that "[t]he Proposed Amended Complaint should have named [Lynbrook Police] Officer Eric Bruen as well . . . ."  (Reply Mem. at 1.)  This addition should be made clear in the Amended Complaint when it is filed.

against the Nassau County Police Department are dismissed.  *See id.*[4]

**B.**   ***Plaintiffs' Motion to add Nassau County, Stork, Arena, and Lashinsky as Parties is Granted in Part and Denied in Part***

**1.**   **Whether the Proposed Amendments Would be Futile**

Plaintiffs allege that their constitutional rights were violated and assert Section 1983 claims for false arrest, excessive force, and malicious prosecution.  Plaintiffs have also asserted a Section 1985 conspiracy claim as well as a state law claim for intentional infliction of emotional distress.[5]  As set forth above, "[a] proposed amendment is futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss."  *Bernhard*, 2012 WL 1344720 at *3 (citing *Lucente*, 310 F.3d at 258).  "In considering a Rule 12(b)(6) motion to dismiss, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Id.* (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (internal alteration and quotation marks omitted)).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[4]   For the same reason, the Court, *sua sponte*, dismisses all causes of action asserted against the Lynbrook Police Department, as they are duplicative of the claims brought against the Village of Lynbrook.  *See Davis*, 224 F. Supp. 2d 463 (dismissing Section 1983 claims brought against the Lynbrook Police Department, which is "an administrative arm of the Village of Lynbrook").

[5]   The Proposed Amended Complaint also sets forth state law causes of action for assault, false imprisonment, malicious prosecution, and abuse of process, but those claims are brought against the Lynbrook Defendants only.  As noted above, because the Lynbrook Defendants have not challenged the merits of any of these claims, the Court will not address them *sua sponte*.

a.   *Plaintiffs' False Arrest Claim*

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "The common law tort of false arrest is a species of false imprisonment . . . [and] [u]nder New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).

Each of these elements is adequately pled in the Proposed Amended Complaint. Plaintiffs have alleged that they were arrested, taken against their will to the Fifth Precinct and, later, to "headquarters," and held there for more than 24 hours. "The validity of an arrest does not depend upon an ultimate finding of guilt or innocence," and therefore "the court looks only to the information that the arresting officer had at the time of the arrest." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998). Here, plaintiffs have alleged that they were detained as a result of improper racial profiling, and were arrested even though they did not fit the descriptions of the alleged suspects. Plaintiffs further contend that their arrests followed an improper and prejudicial "show up" and "photo pack" conducted by, *inter alia*, the Nassau County Defendants. (Am. Compl. ¶¶ 20, 34, 36, 38.) These allegations are sufficient to withstand a motion to dismiss and, thus, this portion of plaintiffs' motion to amend their Complaint is not futile.

11

b.    *Plaintiffs' Excessive Force/Strip Search Claim*

Although the Third Cause of Action in the Proposed Amended Complaint is described as an "Excessive Force" claim, plaintiffs do not appear to allege that they were actually subjected to excessive force in connection with their arrest.  *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (characterizing an "excessive force" claim as one in which plaintiff attempts "to establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment").  Rather, plaintiffs claim that their constitutional rights were violated when Sorrell and Rosario were strip searched by Stork, (Am. Compl. ¶ 28), and when "Defendants . . . conducted an unlawful strip search of [Williams] in another bathroom" (*see id.* ¶ 29).

"The Fourth Amendment prohibits 'unreasonable' searches and seizures."  *Sarnicola v. County of Westchester*, 229 F. Supp. 2d 259, 268 (S.D.N.Y. 2002)*.*  A "particularized reasonableness analysis . . . is required to establish the lawfulness of any warrantless strip search, even one conducted incident to a lawful arrest."  *Id.* at 269.  Thus, an arrestee – even one arrested on a felony charge[6] – cannot be lawfully strip searched absent "reasonable suspicion that the individual is concealing weapons or other contraband."  *Harriston v. Mead*, 2008 WL 4507608, at *3 (E.D.N.Y. Sept. 30, 2008) (noting that the Second Circuit formulated the reasonable suspicion test while evaluating the constitutionality of strip searches of those arrested for misdemeanors and minor violations, but "[a]lthough the Second Circuit has not specifically addressed whether the same standard of individualized reasonable suspicion applies to felony

---

[6]     Plaintiffs allege they were arrested and charged with violating N.Y. Penal Law § 160.10(1), Robbery in the Second Degree, which is a Class C Felony.  (Am. Compl. ¶ 32.)

arrestees, district courts in this circuit have held that it does") (collecting cases).

Here, plaintiffs have alleged that Stork strip searched Sorrell and Rosario, even though "there was no individualized suspicion that any of the Plaintiffs were secreting contraband on their person." (Am. Compl. ¶¶ 28, 29.) This claim, therefore, is not futile and plaintiffs will be permitted to amend their pleading to assert it. The same cannot be said for plaintiffs' claim that an unidentified individual or individuals, described in the Amended Complaint only as "Defendants," strip searched Williams. (*See id.* ¶ 29.) Plaintiffs do not allege that any of the named defendants in the action strip searched Williams or caused her to be strip searched. "Because 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983,'" plaintiffs cannot recover based upon the alleged strip search of Williams, and this claim is therefore futile. *See Faruki v. City of New York*, 2012 WL 1085533, at *8 (S.D.N.Y. Mar. 30, 2012) (quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)).

### c.     Plaintiffs' Malicious Prosecution Claim

"To state a claim for the tort of malicious prosecution under New York law, a plaintiff must prove: '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Garrett v. Port Auth. of N.Y. & N.J.*, 2006 WL 2266298, at *4 (S.D.N.Y. Aug. 8, 2006) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Here, plaintiffs have alleged that Arena and Lashinsky "instigated and encouraged the baseless prosecution of the Plaintiffs" for robbery, and that their indictments were based on the testimony of, *inter alia*, Lashinsky. (Am. Compl. ¶¶ 32, 33.) According to

13

plaintiffs, Lashinsky insisted that plaintiffs be charged, even though he was aware of the

problems with the witness identifications of Morency, and that the plaintiffs did not match the

descriptions of the suspects given to police on the night of the arrest.  Finally, plaintiffs have

alleged that the charges against them were dismissed after they proffered evidence that they were

forty miles from the scene of the crime at the time of the robbery.  Given these alleged facts, and

given that no objection to the sufficiency of this claim has been raised, the Court finds that

plaintiffs' malicious prosecution claim would not be futile.[7]

### d.     Plaintiffs' Monell Claims Against Nassau County

A municipality may be held liable under Section 1983 only if its employees' alleged

conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though

such a custom has not received formal approval through official decision making channels."

*Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).  Accordingly,

in order to maintain a Section 1983 claim against a municipal defendant, a plaintiff must

---

[7]     Courts within the Circuit analyzing the "favorable termination" element of malicious prosecution claims "have reached varying results that are difficult to reconcile." *O'Brien v. Alexander*, 101 F.3d 1479, 1486 (2d Cir. 1996) (internal quotations omitted).  "As a general rule, under the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action."  *Wood v. Town of East Hampton*, 2010 WL 3924847, at *15 (E.D.N.Y. Sept. 30, 2010) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)).  "Under this standard, a plaintiff attempting to sustain a claim for malicious prosecution must show, as a threshold matter, that 'the criminal proceeding was *finally* terminated."  *Id.* (emphasis in the original).  Here, the Court presumes, based on the limited information before it, and without the benefit of any briefing on the issue by the parties, that plaintiffs have adequately alleged the "favorable termination" element.  This finding, however, is made without prejudice to the right of any of the defendants to move for dismissal of this element at some later point in the proceedings.

establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *Id.*; *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005).

The existence of a municipal policy or custom may be pled in any of four ways. A plaintiff may allege that his constitutional injuries arose from: "(1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006); *see also Bonds v. Suffolk Cnty. Sheriff's Dep't*, 2006 WL 3681206, at *2 (E.D.N.Y. Dec. 5, 2006) (same).

Plaintiffs allege that Nassau County has "systematically failed to identify [ ] improper abuse, misuse, [and] violative acts by police officers and officials, while further failing to subject such officers and officials to discipline, closer supervision, and/or restraint." (Am. Compl. ¶ 67.) Plaintiffs have identified six alleged "specific systemic flaws" in the County's "misconduct review process," including Nassau County police officers' "systematic[ ] fail[ure] to credit testimony by non-police officer witnesses" or to "include in their [investigative] reports relevant factual information which would tend to contradict the statements of the police officer involved." (*See id.* ¶ 68.) Moreover, plaintiffs have alleged that Nassau County's alleged failures constituted a "practice, pattern, and custom of intentionally promoting and supporting officers'

15

and officials' violations of 42 U.S.C. § 1983," which caused plaintiffs to be "deprived of their freedom and physically and emotionally harmed." (*Id.* ¶ 71.)  Although this is a close call, the Court finds that these allegations do cross "the line between possibility and plausibility of 'entitlement to relief'" and, as such, are sufficient to state a *Monell* claim against the County based upon plaintiffs' false arrest and malicious prosecution claims.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)).

The same cannot be said, however, for plaintiffs' Section 1983 claims based upon the alleged strip searches of Sorrell and Rosario.  Plaintiffs have not alleged that the County had any policy or practice pursuant to which these strip searches were carried out, *see Murcia v. County of Orange*, 226 F. Supp. 2d 489, 499 (S.D.N.Y. 2002), or that such strip searches were part of a "routine practice" of the Nassau County Police Department.  *Sarnicola*, 229 F. Supp. 2d at 276.  Thus, any *Monell* claim against the County based upon the alleged strip searches would be futile.

### e.   *Plaintiffs' Section 1985 Claim*

To state a cause of action under Section 1985(3), plaintiffs must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).  The conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Id.* (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995)) (internal quotation marks omitted).  "Furthermore, the conspiracy must also be motivated by some racial or perhaps

16

otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.*
(quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993))
(internal quotation marks omitted).

Here, plaintiffs allege that the Nassau County Defendants conspired with the Lynbrook
Defendants to "unlawfully stop, falsely detain, unlawfully accuse, wrongfully arrest and falsely
imprison" the plaintiffs (Am. Compl. ¶ 82), and to cover up their "misconduct" to prevent
plaintiffs "from being compensated" for damages arising from these unconstitutional actions (*id.*
¶ 83).  Conclusory allegations aside, plaintiffs have not alleged the existence of any "explicit
agreement" between the alleged conspirators, or even a "tacit understanding to carry out" the
alleged constitutional violations.  *See Thomas*, 165 F.3d at 146.  It is well-established that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does
> not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements of
> a cause of action will not do. Factual allegations must be enough to
> raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in
> fact).

*Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted).  Here, plaintiffs'
allegations of a Section 1985 conspiracy do not meet this standard.  Because these allegations do
not "plausibly give rise to an entitlement to relief," *Iqbal*, 556 U.S. at 679, plaintiffs' motion to
amend the Complaint to assertion a Section 1985 conspiracy claim is denied as futile.

> f.      *Plaintiffs' Intentional Infliction of Emotional Distress Claim*

The Eighth Count of the Proposed Amended Complaint is a New York state law claim of
intentional infliction of emotional distress.  (*See id.* ¶¶ 93-98.)  As noted above, Rule 15 does not

permit amendments that would be futile, and this includes amendments asserting time-barred claims. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). "The applicable statute of limitations for . . . intentional infliction of emotional distress under New York state law is one year." *Young v. Suffolk County*, 705 F. Supp. 2d 183, 211 (E.D.N.Y. 2010) (citing N.Y. C.P.L.R. § 215(3)). The arrest at issue occurred on October 11, 2008 and the charges were ultimately dismissed against plaintiffs on January 27, 2009. (Am. Compl. ¶ 31). Plaintiffs' request to amend the Complaint was made on July 12, 2011 – well beyond the expiration of the one-year statute of limitations.

If, however, "a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001). Pursuant to Rule 15(c)(1)(C), "[a]n amendment to a pleading relates back to the date of the original pleading" when three conditions are met: (1) the new claims "arose out of the conduct, transaction, or occurrence" set forth in the original pleading, and (2) "within the period provided for by Rule 4(m) for serving the summons and complaint," the new party "received such notice of the action that it will not be prejudiced in defending on the merits," and (3) during the Rule 4(m) service period the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

The original Complaint was filed on January 6, 2010 – more than one year after the arrest, but less than one year after the charges against plaintiffs were dismissed. Plaintiffs, apparently operating under the assumption that the one-year statute of limitations began to run on the date

the charges were dropped, assert that their intentional infliction of emotional distress claim "relates back" to the original Complaint because that claim "[arose] out of the same exact conduct asserted in the original pleading." (Pls.' Mem. at 11.) Even if the Court assumes *arguendo* that the statute of limitations began to run on the date plaintiffs' charges were dropped (as opposed to the date of their arrest or release from custody), their intentional infliction of emotional distress claims against the Nassau County Defendants are still time-barred. Plaintiffs have made no effort to demonstrate the other elements of Rule 15(c)(1)(C), namely, that (1) "within the period provided for by Rule 4(m) for serving the summons and complaint," the Nassau County Defendants "received such notice of the action that it will not be prejudiced in defending [the intentional infliction of emotional distress claim] on the merits," and (2) during the Rule 4(m) service period the Nassau County Defendants "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

Thus, plaintiffs' intentional infliction of emotional distress claim against the Nassau County Defendants is futile, and that portion of plaintiffs' motion to amend the Complaint to assert this claim against them is denied.[8]

### 2.   Whether the Nassau County Defendants Would be Unduly Prejudiced by the Proposed Amendment

"In determining whether leave to amend should be granted, among the 'most important' issues to consider is prejudice to the opposing party." *Bernhard*, 2012 WL 1344720 at *7

---

[8]     The Lynbrook Defendants have not, at any point, moved to dismiss the intentional infliction of emotional distress claim lodged against them. Because no party has briefed the issue of the appropriate trigger date for the one-year statute of limitations, the Court declines to dismiss this claim as against them *sua sponte*.

(quoting *AEP Energy Servs. Gas Holding Co.*, 626 F.3d at 725)).  "In analyzing 'prejudice,' courts consider whether the amendment would: (1) require the opponent to 'expend significant additional resources to conduct discovery and prepare for trial,' (2) significantly prolong the resolution of the action, or (3) 'prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Id.* (quoting *Monahan v. N.Y. City Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000)).  "[I]n general, 'the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'" *Id.* (quoting *United States v. Cont'l Ill. Nat'l Bank & Trust of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989)).

Here, the Nassau County Defendants would not be unduly prejudiced by the assertion of plaintiffs' proposed non-futile Section 1983 and 1985 claims against them.  In particular, the Court notes that the named individual Nassau County Defendants (Arena, Lashinsky, and Stork) have already been deposed.  (*See* Lynbrook Defs.' Exs. I, J, & K.)  Even if the Nassau County Defendants wish to re-depose the individual Lynbrook Police Officers who have already testified, this is not such a significant burden as to warrant denial of plaintiffs' motion to amend.

Finally, nothing in the record indicates that plaintiffs have acted in bad faith in bringing the present motion to amend.  There is no dispute that plaintiffs' proposed amendment stems from information learned during discovery, which evidences plaintiffs' good faith.  *See Bernhard*, 2012 WL 1344720 at *8.

*CONCLUSION*

For the reasons set forth above, plaintiffs' motion to amend is granted in part and denied in part.  Plaintiffs' motion to amend the Complaint to substitute "Police Officers John Doe 1 though 10" with Patrick J. Hahl, Peter R. Festa, Brian Paladino, Brian Cunningham, and Eric Bruen is granted.  Plaintiffs' motion to amend the Complaint to assert claims against Nassau County, Detective Greg M. Arena, Detective Robert J. Lashinsky, and Police Officer Marissa Stork is granted to the extent plaintiffs may assert: (1) Section 1983 false arrest and malicious prosecution claims against these defendants, and (2) Section 1983 strip search claims – based on the alleged strip searches of Sorrell and Rosario – against Stork only.  Plaintiffs' motion to amend is denied to the extent plaintiffs request to amend the Complaint to assert: (1) Section 1983 strip search claims against Nassau County, (2) Section 1985 and intentional infliction of emotional distress claims against the Nassau County Defendants, and (3) any claims against the Nassau County Police Department.

Finally, plaintiffs' claims against the Lynbrook Police Department are dismissed, *sua sponte*.

**SO ORDERED.**

Dated:  Central Islip, New York
          June 4, 2012                                              /s/
                                                                     Denis R. Hurley
                                                                     Unites States District Judge

21