UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GEORGETTE SORRELL, JUANA ROSARIO,
MACHEL WILLIAMS, and DONALD MORENCY,

                    Plaintiffs,                              **MEMORANDUM AND ORDER**
                                                            10 CV 49 (DRH) (GRB)

       -against-

THE COUNTY OF NASSAU, THE INCORPORATED
VILLAGE OF LYNBROOK, POLICE OFFICER
PATRICK J. HAHL, in his official and individual
capacity, POLICE OFFICER PETER R. FESTA, in his
official and individual capacity, POLICE OFFICER
BRIAN PALADINO, in his official and individual
capacity, POLICE OFFICER BRIAN R.
CUNNINGHAM, in his official and individual capacity,
POLICE OFFICER ERIC BRUEN, in his official and
individual capacity, POLICE OFFICER MARISSA D.
STORK, in her official and individual capacity,
DETECTIVE GREG M. ARENA, in his official and
individual capacity, and DETECTIVE ROBERT J.
LASHINSKY, in his official and individual capacity

                    Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**Attorney for Plaintiffs:**

**LAW OFFICES OF FREDERICK K. BREWINGTON**
556 Peninsula Boulevard
Hempstead, New York 11550
By:    Frederick K. Brewington, Esq.

**Attorney for Defendants Incorporated Village of Lynbrook, Police Officer Patrick J. Hahl, Police Officer Peter R. Festa, Police Officer Brian Paladino, Police Officer Brian R. Cunningham, Police Officer Eric Bruen:**

**SILER & INGBER, LLP**
1399 Franklin Avenue, Suite 103
Garden City, NY 11530
By:    Jeffrey B. Siler, Esq.
       Maria Massucci, Esq.

**Attorney for Defendants Nassau County, Police Officer Marissa D. Stork, Detective Greg M. Arena, and Detective Robert J. Lashinsky:**

**OFFICE OF NASSAU COUNTY ATTORNEY**
1 West Street
Mineola, New York 11501
By:     Andrew Reginald Scott, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Georgette Sorrell ("Sorrell"), Juana Rosario ("Rosario"), Machel Williams ("Williams"), and Donald Morency ("Morency"), (collectively "Plaintiffs") commenced this action asserting claims against defendants Nassau County ("Nassau" or "County"), Nassau County Police Officer Marissa D. Stork ("Stork"), and Nassau County Detectives Greg M. Arena ("Arena") and Robert J. Lashinsky ("Lashinsky") (collectively, "Nassau defendants" or "County defendants"), as well as the Village of Lynbrook ("Lynbrook"), Lynbrook Police Officers Patrick J. Hahl ("Hahl"), Peter R. Festa ("Festa"), Brian Paladino ("Paladino"), Brian R. Cunningham ("Cunningham"), and Eric Bruen ("Bruen") (collectively, the "Lynbrook defendants") pursuant to, *inter alia*, 42 U.S.C. § 1983 and the Fourth Amendment to the Constitution of the United States.[1]  Presently before the Court are the Nassau defendants' and the Lynbrook defendants' motions, made pursuant to Federal Rule of Civil Procedure ("Rule") 56, seeking summary

---

[1] Plaintiffs sue the named officers in both their official and individual capacities. However, the claims against them in their official capacities and the claims against the municipal defendants are redundant.  Accordingly, the claims against the officer defendants in their official capacities are dismissed.  *See Bissinger v. City of New York*, 2007 WL 2826756, at *4 (S.D.N.Y. Sept. 24, 2007).  The claims against Lynbrook and the County are addressed in part V of this decision.

judgment. For the reasons set forth below, the Nassau defendants' motion is granted in part and denied in part and the Lynbrook defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 Statements and are undisputed unless otherwise noted.

*Plaintiffs' Arrests*

Trisha Marcello ("Marcello") and Tyrell Outlaw ("Outlaw") claim that on October 11, 2008, at around 8:40 p.m., they were walking in the general vicinity of Sylvester Place and Harding Avenue in Lynbrook, New York when individuals emerged from a car and attacked and robbed them. The parties do not dispute that Hahl ultimately obtained a description of the alleged assailants from Marcello and transmitted the description over the police radio to the other Lynbrook officer defendants. Plaintiffs contend that the description contained in the Lynbrook Police Department Police Blotter is the description that the officers received over the radio. (Pls.' 56.1 Counter Stmt. ¶¶ 52, 54, 56.) According to the police blotter report, the assailants were a black male and two black females. (Pls.' Ex. B.) The report also described the assailants as being in their twenties and the male as tall and chubby and wearing all black and a black doo-rag. One female was described as wearing a white shirt and jeans and the other as wearing a pink shirt, jeans, and a lot of jewelry, and both were described as having "nappy hair worn up." That report also states that the assailants emerged from a white four-door "crappy" looking automobile.

After hearing the radio call, Bruen canvassed the area of the alleged assault for a vehicle matching the description from the radio transmission. At approximately 9:12 p.m., Bruen noticed the plaintiffs' vehicle, a white four-door Honda sedan containing body damage, traveling

south on Peninsula Boulevard. He notified the other Lynbrook officers of the vehicle and his location over police radio and stopped the vehicle at the intersection of Peninsula Boulevard and Rockaway Avenue, approximately 1.5 miles away from the alleged robbery. All four plaintiffs were discovered in the vehicle at that point. At around the same time, Detective Arena and Detective Lashinsky were advised of the robbery by the Lynbrook Police Department and responded to Bruen's location. Officers Cunningham and Festa also responded to Bruen's location.

Prior to Detective Arena and Detective Lashinsky's arrival, at approximately 9:32 p.m., Marcello, having been driven to the scene of the stop by Hahl, participated in a field show-up. There is no dispute that Marcello positively identified Rosario, Sorrell, and Williams in the show-up, but the parties dispute whether Marcello identified plaintiff Morency. There is also no dispute that at some point after the show-up Arena and Lashinsky were provided with a written statement from Marcello identifying her assailants as Rosario, Sorrell, and Williams. (Pls.' Ex. N.) This document makes no mention of plaintiff Morency.

After the show-up, Arena and Lashinsky instructed the Lynbrook officers to separate the four plaintiffs and transport them to the Fifth Precinct for further investigation. According to plaintiffs, Rosario, Sorrell, and Williams were transported in handcuffs, while Morency was not handcuffed until some time after his arrival at the precinct. (Pls.' 56.1 Counter Stmt. ¶¶ 132-34.)

Lashinsky and Arena also returned to the precinct to continue their investigation, and after preparing a photo array they returned to Lynbrook to meet Outlaw at his home. The photo array consisted of a photograph of plaintiff Williams and five other unrelated black males. When Arena and Lashinsky showed Outlaw the photo array, he identified Williams as the man who assaulted and robbed him. Additionally, at some point after the arrests, Arena and Lashinsky

brought Marcello into the parking lot of the Fifth Precinct where she positively identified the car that plaintiffs had been driving as the one that was driven by the individuals who robbed her.

When she first arrived at the precinct, Sorrell was handcuffed to a bench on the second floor of the Fifth Squad. Rosario was handcuffed to a table in a room she described as an "office" also on the second floor. Williams was placed in a holding cell in the basement, and Morency was seated at a police officer's desk on the second floor.

At some point after their arrival at the Fifth Precinct, plaintiffs Sorrell and Rosario were taken to a restroom to undergo what plaintiffs describe as a "strip search," the details of which will be discussed more fully below. Officer Stork, a female police officer, accompanied Sorrell and Rosario into the restroom and performed these searches.

*The Prosecution*

Plaintiffs were arraigned in Nassau County Court on October 13, 2008, prior to which they were held at Nassau County Police Headquarters for 24 hours. Plaintiff Rosario was released on her own recognizance. Plaintiff Sorrell was released on $5,000 bail. Morency was remanded without bail. Williams was unable to make bail and remained incarcerated following the arraignment.

Following the arraignment, Assistant DA Zeena Abdi ("Abdi") was assigned the case and was contacted by Plaintiffs' defense counsel regarding an alibi. Counsel informed Abdi that on the night of the alleged robbery, plaintiffs stopped at an Exxon gas station in Holtsville, Suffolk County, approximately 40-42 miles away from the robbery scene in Lynbrook and that the gas station had a surveillance camera. A review of the Exxon surveillance tape showed Morency arriving and departing from the station between 8:20 p.m. and 8:26 p.m. Morency was driving the same four door Honda he was driving at the time of his arrest as well as wearing the same

clothes he was wearing at the time of his arrest. ADA Abdi also reviewed the cell phone records of each plaintiff and found that Sorrell had made a phone call from "the vicinity of Holtsville" around 8:27 p.m. and a statement from Williams indicating that the four plaintiffs were in the car together at the gas station. ADA Abdi noted that it would have been physically impossible for plaintiffs to travel from Holtsville to Lynbrook between 8:27 and 8:40 p.m., the time that the robbery occurred. As a result, Abdi dismissed all charges against the plaintiffs.

## *DISCUSSION*

### I.      *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.,* 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material: "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012); *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Wright v. Goord,* 554 F.3d 255,

266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French,* 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson,* 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange,* 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady,* 863 F.2d at 210–11). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.' " *Brady,* F.2d at 211 (citing *Matsushita,* 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other

facts immaterial." *Crawford,* 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

## II.     *False Arrest and False Imprisonment Pursuant to § 1983*

### A.     *Defendants' Involvement*

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994)). The County defendants do not contest Lashinsky and Arena's involvement in the plaintiffs' arrests, but Lynbrook defendants contend that only the County defendants participated in the arrests of the plaintiffs. (Lynbrook Defs.' Mem. in Supp. at 7.) Therefore, the Court must address the Lynbrook defendants' involvement in the arrests.

Plaintiffs have pointed to evidence suggesting that at least some of the Lynbrook defendants were personally involved in plaintiffs' arrests. There is no dispute that Bruen initially stopped plaintiffs and that Festa and Cunningham also were present during the stop. Additionally, Bruen is listed as the arresting officer for plaintiff Morency, (Pls.' Ex. JJ, Arrest Report for Donald Morency), and Festa is listed as the arresting officer for plaintiff Sorrell (Pls.' Ex. Y, Arrest Report for Georgette Sorrell). Additionally, Cunningham testified that he transported one of the plaintiffs to the Fifth Precinct from the site of the stop. (Pls.' Ex. U, Cunningham Dep. at 38.) Moreover, Hahl participated in the arrests by transmitting the description of the defendants over the police radio and transporting Marcello to where plaintiffs were stopped to conduct the show-up. Plaintiffs' briefs, however, do not discuss what, if any, involvement Paladino had in the plaintiffs' arrests. And although there is no dispute that Stork was involved in the alleged "strip search" of plaintiffs, which will be discussed more fully

below, plaintiffs do not point to any evidence that Stork participated in the arrest of plaintiffs. As a result, the false arrest claims are dismissed against Paladino and Stork.

### B. Whether There Was Probable Cause to Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). "The common law tort of false arrest is a species of false imprisonment ... [and] [u]nder New York law, the elements of a false imprisonment claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citation omitted). The existence of probable cause to arrest negates the final element, *Harris v. Cty. of Nassau,* 581 F. Supp. 2d 351, 355 (E.D.N.Y. 2008) (citing *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir. 2002)), and "is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983," *Weyant,* 101 F.3d at 852 (internal quotation marks and citations omitted). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* The probable cause determination is based upon "those facts available to the officer at the time of the arrest and immediately before it." *Caldarola,* 298 F.3d at 162 (quoting *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996)) (internal quotation marks omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the

pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." *Weyant*, 101 F. 3d at 852 (internal citations omitted).

Both the Nassau and Lynbrook defendants argue that plaintiffs' false arrest claims must fail because defendants had probable cause to arrest the plaintiffs. Defendants argue that probable cause to arrest existed based on the radioed descriptions of the assailants and their vehicle, Marcello's identification of the plaintiffs in a show-up, and Marcello's written statement. They also argue that the legitimacy of plaintiffs' arrests was reinforced by Outlaw's identification of Williams in a photo array and Marcello's identification of the plaintiffs' vehicle as the one that belonged to her assailants.

*Sorrell, Rosario, and Williams*

The Court will first examine whether the descriptions of the suspects transmitted over police radio and the show-up identification provided the officers with probable cause to arrest Sorrell, Rosario, and Williams. As discussed above, the police blotter report contains a description of the suspects and the car they were driving that plaintiffs assert reflects the descriptions that were transmitted over the police radio to the Lynbrook officer defendants. (Pls.' Ex. B.) There is no dispute the plaintiffs were stopped while driving a white four door Honda Sedan with body damage, which matches the description of the car in the blotter report, and there is no dispute that plaintiffs matched the description of the assailants in that they are black. The rest of the radioed description of the assailants, however, does not entirely match the appearance of Williams, Rosario, and Sorrell at the time they were arrested. For example, in the photographs taken of the plaintiffs at the police station, neither of the two women was wearing a pink shirt, although one was wearing a white shirt with pink lettering. (Pls.' Ex. H, p. 2-3.) The other woman was wearing a black t-shirt and a dark blue sweatshirt. (*Id.*) Neither of the two

women had on visible jewelry, nor were they wearing their hair up.  (*Id.*)  Although the male was described as wearing all black, Machel Williams was wearing a black T-shirt with a design on the front.  (*Id.*)  Moreover, there were two males in the car, while the description mentioned only 1 black male assailant.

With regard to the show-up identification, there is no dispute that Marcello identified Rosario, Sorrel, and Williams at the location of the stop.  Although a show-up procedure is "inherently suggestive because it involves the presentation of a single suspect to a witness by the police," the Second Circuit has recognized that on-the-scene identification is often necessary to prevent the arrest of innocent persons.  *See  Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) ("Exigent circumstances generally weigh in favor of concluding that a showup identification procedure was not unnecessarily suggestive, because a showup procedure may be necessary in such circumstances to quickly confirm the identity of s suspect, or to ensure the release of an innocent suspect"); *U.S. v. Bautista*, 23 F. 3d 726, 730 (2d Cir. 1994).  Moreover, "[o]rdinarily, the identification, by an eyewitness, of a suspect will likely be sufficient to establish probable cause for an arrest."  *Hargroves v. City of New York*, 411 F. App'x 378, 383 (2d Cir. 2011).  Here, plaintiffs argue, however, that the show-up identification procedures were "extremely suggestive" such that they could not provide probable cause because "(1) Plaintiffs were lined up in a row on [a] busy median; 2) numerous police officers [were] standing nearby Plaintiff; 3) a spot light was shining on the Plaintiffs; and 4) numerous marked police vehicles with flashing lights were on the scene."  (Pls.' Mem. in Opp'n to County at 5-6.)  Additionally, plaintiffs contend that the show-up was unreliable because Marcello identified the suspects "from across two lanes of traffic."  (*Id*. at 6.)  According to plaintiffs, "the scene was one that marked

Plaintiffs to be selected based on the posture into which they were thrust, which was overly suggestive, and the fact that there were no other Black people to pick from." (*Id.*)

Plaintiffs, however, have not provided any authority convincing the Court that the show-up in this case was so suggestive such that it could not provide probable cause to arrest, and Courts in this circuit actually have rejected arguments similar to plaintiffs'. *See Gil v. Cty. of Suffolk*, 590 F. Supp. 2d 360, 364, 368 (E.D.N.Y. 2008) ("evidence [did] not suggest that the show-up identification was so flawed as to undermine probable cause" where plaintiff argued that show-up scene was "artificially created" by police officers and victim identified plaintiff from across the street); *see also Bautista*, 23 F.3d at 730 (identification was not unnecessarily suggestive where suspect was presented to witness in handcuffs, at night, in the custody of police officers, and with his face lit by flashlights). In fact, in *Gil v. County of Suffolk*, the court found that the show-up provided probable cause to arrest the plaintiff even though the plaintiff's appearance at time of his arrest "differed significantly" from the description of the suspect provided to the police. 590 F. Supp. 2d at 364. Similarly, here, the show-up provided the officers with probable cause to arrest plaintiffs despite any variations between their radioed descriptions and their actual appearance. Given that there is no dispute that Williams, Rosario, and Sorrel were identified in the show-up, the Court concludes that once the show-up took place, defendants had probable cause to arrest these three plaintiffs. [2] As a result, their false arrest claims are dismissed.

---

[2] There is no dispute that Marcello's subsequent written statement also identified Rosario, Sorrell, and Williams. There is some dispute, however, as to when Marcello gave this written statement to the police. While County defendants assert that that statement was taken and shown to Detectives Arena and Lashinsky at the scene of the stop, they do not cite to any facts in the record that support their position. (County Defs.' 56.1 Stmt. ¶ 22.) Plaintiffs, however, cite to

Moreover, plaintiffs have not pointed to any evidence indicating that the subsequent photo array identification and identification of the plaintiffs' vehicle at the police station were so suggestive as to undermine this probable cause. Specifically, plaintiffs rely on *Jenkins v. City of New York* in arguing that the photo array was unnecessarily suggestive, but the facts in that case are unlike those present here. In that case, the witness testified that he picked someone from the photo array "[b]ecause the detectives were, like, you had to pick somebody. I just wanted to go home and they were just, like, forcing me to pick somebody." 478 F.3d 76, (2d Cir. 2007). Here, however, plaintiffs have not pointed to any evidence that Arena and Lashinsky coerced Outlaw into choosing someone from the photo array.

*Morency*

Plaintiffs argue that "[n]either [Lynbrook] Defendants [n]or County Defendants have been able to articulate [the] basis for Plaintiff Morency's arrest, since he was not identified by either Ms. Marcello or Mr. Outlaw as one of the alleged assailants." (Pls.' Mem. in Opp'n at 8.) Although defendants contend that Marcello identified all four of the plaintiffs at the show-up, Marcello's written statement identifying only Rosario, Sorrell, and Williams raises a genuine question of fact as to whether Marcello actually identified Morency at the show-up. Given this dispute, the Court cannot say that there was probable cause to arrest Morency after the show-up, and his false arrest claim survives.[3]

---

deposition testimony of Detective Arena, where he states that the show-up statement was not taken until after the plaintiffs arrived back at the precinct. (Pls.' 56.1 Counter Stmt. ¶ 137.) In any event, the timing is not significant to the Court's analysis as there was probable cause to arrest Rosario, Sorrell, and Williams based on the show-up alone.

[3] County defendants argue that "Detectives Arena and Lashinsky were told by the Lynbrook Police that one of the victims identified the four in the car as being the ones who

Furthermore, although the County and Lynbrook defendants argue that plaintiffs' false arrest claims should be dismissed alternatively based on qualified immunity, they do not provide a developed argument on that point. Instead they provide only a general statement of the law of qualified immunity and conclude that "there is no question" that defendants are entitled to qualified immunity, without providing any application of the specific facts of this case to the law. (Nassau Defs.' Mem. in Supp. at 18; *see also* Lynbrook Defs.' Reply at 6-7.) As a result, their motion for summary judgment on qualified immunity grounds is denied.

*The Initial Stop*

Plaintiffs' succinct objection to the officers' basis to conduct the initial stop warrants addressing. Although plaintiffs do not set forth what kind of legal basis was required for this stop, it is clear that an officer "may stop a person to investigate possible criminal behavior based upon reasonable suspicion, even if there is no probable cause to make an arrest." *Sethi v. Nassau Cty.*, 2014 WL 2526620, at *4 (E.D.N.Y. Jun. 3, 2014) (citing *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 648 (S.D.N.Y. 2013). Given that there is no dispute that plaintiffs drove a car matching the description transmitted over the police radio and that they were stopped only 1.5 miles away from the alleged crime and approximately a half hour after the alleged crime occurred, the police had reasonable suspicion to stop the plaintiffs. *See United States v. Breckenridge*, 400 F. Supp. 2d 434, 442 (D. Conn. 2005) (finding that officer had reasonable suspicion to stop vehicle where vehicle matched description of suspect's vehicle and stop was conducted in close geographic and

---

robbed her," and that they were reasonable in relying on that information in arresting all four plaintiffs, including Morency. (Defs.' Reply at 2 (citing *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).) Defendants, however, do not point to any factual support for this position in the record. (County Defs.' 56.1 Stmt. ¶ 21.)

temporal proximity to alleged crime).  Moreover, given that only approximately 20 minutes elapsed between the stop and the show-up identifying the plaintiffs, plaintiffs' rights were not violated.  *Gil*, 590 F. Supp. 2d at 368 (finding that initial stop and detainment of plaintiff "did not violate [plaintiff's] constitutional rights" where no more than 17 minutes elapsed between initial stop and show-up identifying plaintiff).  As a result, any false arrest claim based on defendants' initial stop of plaintiffs is dismissed.

### III.    Plaintiffs' "Strip Search" Claims

Plaintiffs contend that Sorrel and Rosario were wrongfully subjected to a warrantless "strip search" by Stork.  Nassau defendants argue, however, that no strip search occurred and that plaintiffs were "merely subjected to a search incident to a lawful arrest."  (Nassau Defs.' Mem. in Supp. at 9.)  It is well accepted that searches incident to lawful arrest constitute exceptions to the warrant requirement of the Fourth Amendment.  *Riley v. California*, 134 S. Ct. 2473, 2482 (2014).  Moreover:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape.  Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated.  In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction . . . .  There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

*Chimel v. California*, 395 U.S. 752, 762-63 (1969).  However, "[e]ven if a warrant is not required, a search is not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of execution."  *Maryland v. King*, 133 S. Ct. 1958, (2013).

Here, both Sorrell and Rosario testified at their depositions regarding the details of the search. Sorrell was required to "move [her] bra forward and shake to make sure there was nothing in there" and "pull [her] pants down and squat . . . to make sure there was nothing up [her] backside." (Sorrel Dep., Nassau Defs.' Ex. B. at 40.) Similarly, Stork checked Rosario's bra and made her bend down. (Rosario Dep., Nassau Defs.' Ex. C at 61.) Rosario also seems to have implied at her deposition that Stork handled her breasts. (*Id.*) Rosario testified, however, that she did not remember being required to remove her shirt or pants. (*Id.* at 62.) Thus, neither plaintiff was required to fully remove all of her clothes, but the search did require some movement of the plaintiffs' clothing away from their bodies and was "aimed at uncovering contraband that may have been concealed in [their] undergarments." *Mason v. Village of Babylon, New York*, 124 F. Supp. 2d 807, 811 (E.D.N.Y. 2000).

The County defendants insist that since plaintiffs were not required to remove all of their clothing, the searches of Sorrell and Rosario were not strip searches and did not violate plaintiffs' rights. But simply asserting that the search was not a "strip search" is not enough to demonstrate defendants' entitlement to summary judgment. Defendants focus only on the scope of the search and "fail[] to engage in the reasonableness inquiry and the balancing required by the Supreme Court of the United States and the Second Circuit. . . . [T]his approach requires consideration of the crime charged and the facts and circumstances surrounding the arrest as well as the scope of the search, the manner in which it is conducted, and the place where the search is conducted." *Id.* at 816. As a result, defendants' motion for summary judgment on plaintiffs' Fourth Amendment unreasonable search claim is denied.

## IV.  *Malicious Prosecution and Abuse of Process Pursuant to § 1983*

*Malicious Prosecution*

To prevail on a claim for malicious prosecution pursuant to both § 1983 and New York law, a plaintiff must establish (1) the defendant initiated a prosecution against plaintiff; (2) without probable cause to believe that the prosecution could succeed; (3) the proceeding was begun with malice, and (4) the prosecution terminated in plaintiff's favor. *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 130 (2d Cir. 1997). A claim for malicious prosecution under § 1983 requires the additional element of a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Payne v. Cty. of Nassau,* 2005 WL 2179419 (E.D.N.Y. 2005). With regard to the second element, even if probable cause existed at the time of arrest, "evidence could later surface which would eliminate that probable cause," *Cox v. Cty. of Suffolk,* 780 F. Supp. 103, 108 (E.D.N.Y. 1991) and the "failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Lowth,* 82 F.3d at 571.

The parties' discussion of this claim is limited to the probable cause and malice elements. With regard to probable cause, plaintiffs argue that defendants did not have probable cause to arrest plaintiffs and that defendants "ignored repeated Plaintiffs' explanations of innocence and refused to investigate Plaintiffs' alibi" as well as "failed to conduct any investigation into even the possibility Plaintiffs were innocent and failed to question Plaintiffs in any substantive capacity." (Pls.' Mem. in Opp'n to County at 14-15; Pls.' Mem. in Opp'n to Lynbrook at 13.) In support of its claims, plaintiffs refer only to Sorrell's testimony that she stated she did not do anything wrong and told Arena and Lashinsky that she was at a gas station at the time the alleged crime occurred and that they should check the station's camera. (Pls.' 56.1 Counter Stmt. ¶¶ 172, 179.)

As discussed above, defendants had probable cause to arrest plaintiffs Rosario, Sorrell, and Williams. Even assuming that plaintiff Sorrell did notify the detectives about a possible alibi, "the police are not obligated to pursue every lead that may yield evidence beneficial to the accused, even though they had knowledge of the lead and the capacity to investigate it." *See Richards v. City of New York*, 2003 WL 21036365, *16 (S.D.N.Y. May 7, 2003). Moreover, "[t]he mere assertion of an alibi, and even the failure to investigate such an alibi to plaintiff's satisfaction, does not overcome the existence of probable cause to prosecute where there is no evidence of fraud or suppression of evidence." *Candelario v. City of New York*, 2013 WL 1339102, *7 (S.D.N.Y. Apr. 3, 2012) (internal quotation marks and citations omitted). Since plaintiffs have not raised any evidence of fraud or suppression here, there is no genuine question of fact as to whether defendants had probable cause to prosecute Rosario, Sorrell, and Williams.

Moreover, there is no evidence of malice with regard to Sorrell, Rosario, and Williams. Malice in the context of malicious prosecution "does not connote actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.' " *Khan v. Ryan,* 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001) (quoting *Lowth,* 82 F.3d at 572). Actual malice is lacking when a police officer reasonably chooses between conflicting evidence. *See Mazza v. City of New York,* 1999 WL 1289623, *5-6 (E.D.N.Y. Jul 13, 1999). Although malice may be inferred from a lack of probable cause, *Lowth*, 82 F.3d at 573, as already discussed, there is no question as to whether the officers had probable cause to arrest and prosecute Rosario, Williams, and Sorrell, and so malice may not be inferred on that basis. Moreover, although plaintiffs argue that they were wrongfully prosecuted because of their race, they have not pointed to any evidence in the record to support their theory.

The Court, however, reaches a separate conclusion with respect to plaintiff Morency. As discussed above, plaintiffs have raised a genuine question of fact as to whether the defendants had probable cause to arrest Morency. That same question exists as to whether there was probable cause to prosecute Morency. Moreover, "[r]egarding the malice element of malicious prosecution, the Second Circuit has noted that 'lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment.' " *Diop v. City of New York*, 50 F. Supp. 3d 411, 422 (S.D.N.Y. 2014) (quoting *Ricciuti*, 124 F.3d at 131). As a result, Morency's malicious prosecution claim survives.

*Abuse of Process*

The elements of a § 1983 cause of action for malicious abuse of process are provided by state law. *Cook v. Sheldon,* 41 F.3d 73, 80 (2d. Cir. 1994). In New York, a claim for malicious abuse of process requires allegations "that the defendant '(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.' " *Sherwin Toppin Mktg. Consultants, Inc. v. City of New York,* 2013 WL 685382, at *11 (E.D.N.Y. Feb. 25, 2013) (quoting *Savino v. City of New York,* 331 F.3d 63, 76 (2d Cir. 2003)). The essence of an abuse of process claim is "the improper use of process after it is regularly issued." *Cook,* 41 F.3d at 80 (internal citation and quotation marks omitted); *see also Mangino v. Village of Patchogue,* 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011) ("[T]he gist of the tort of abuse of process, [as] distinguished from malicious prosecution, is not commencing an action or causing process to issue without justification, but misusing or misapplying process *justified in itself* for an end other than that which it was designed to accomplish.") (citations and internal quotation marks omitted).

Plaintiffs have not pointed to any evidence supporting their claim that defendants acted with the collateral objective of "arresting some one to solve the alleged crime, and satisfy public outcry." (Pls.' Mem. in Opp'n to County at 18; Pls.' Mem. in Opp'n to Lynbrook at 16.) Moreover, although plaintiffs also argue that defendants abused the process by arresting them without probable cause, probable cause remains a question only as to Morency. Therefore, only Morency's abuse of process claim survives. *See Goldring v. Zumo*, 2015 WL 148451, at *5 (E.D.N.Y. Jan 12, 2015) ("lack of probable cause is sometimes sufficient evidence of a collateral objective").

## V.  *Municipal Liability*

A municipality may not be held liable under § 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through . . . official decisionmaking channels." *Id*. at 690-91. Therefore,

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Coon v. Town of Springfield, Vt.,* 404 F.3d 683, 686 (2d Cir. 2005) (quoting *Monell,* 436 U.S. at 694).

In order to establish the existence of a municipal policy or custom, a plaintiff may demonstrate that his or her constitutional injuries arose from:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees.

*Williams v. City of Mount Vernon,* 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).

Plaintiffs argue that Nassau County "failed to supervise Defendant Detectives by neglecting to oversee the circumstances of the Plaintiffs' arrest demonstrated by: 1) the highly suggestive 'showup' being utilized as a basis for arrest; 2) the arrest of Plaintiff Morency that lacked any basis whatsoever for his arrest; 3) failure to review . . . arrest paperwork which would have revealed the aforementioned issues; 4) failure to instruct Defendant Detectives to check Plaintiffs [sic] alibis; 5) failure [to] exclude suggestive identification of Plaintiff's car in arrest packet." (Pls.' Mem. in Opp'n to County at 20.) Additionally, plaintiffs contend that Nassau detectives "lacked training in areas such as conducting sound methods of identification; what defines sufficient probable cause, the necessity of interviewing suspects, and how to follow up with alibis." (*Id.* at 20.) Plaintiffs make similar arguments with respect to the Village of Lynbrook. (Pls.' Mem. in Opp'n to Lynbrook at 18.)

Plaintiffs' argument fails because they have not presented any evidence that the alleged violations were a result of any policy or custom of either Nassau County or Lynbrook. *Ying Jing*

*Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"). As a result, this claim is dismissed.

## VI.    *State Law Claims*

Plaintiffs assert state law claims of intentional infliction of emotional distress, assault, unlawful imprisonment, malicious prosecution, and abuse of process. For the same reasons discussed with regard to plaintiffs' § 1983 claims, Morency's state unlawful imprisonment (referred to above as false imprisonment), malicious prosecution, and abuse of process claims survive, but those of the other plaintiffs' are dismissed. While defendants contend that plaintiffs have failed to raise any evidence of assault, plaintiffs do not respond. That claim, therefore, is considered abandoned and is dismissed.

Plaintiffs' claim of intentional infliction of emotional distress is also dismissed. In order to assert a claim for intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must show: "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard or a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Margrabe v. Sexter & Warmflash, P.C.,* 353 F. App'x 547, 550 (2d Cir. 2009) (quoting *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir. 2001)) (internal quotation marks omitted). "The conduct at issue must transcend the bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). Generally, "courts are reluctant to allow recovery under the banner

of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation." *Id.* (internal quotation marks, citation, and alteration omitted).

Plaintiffs argue this claim only with regard to plaintiff Morency. Plaintiffs argue that as a result of his arrest, Morency was incarcerated at a tough prison for approximately four months, was suspended from a work release program, his parole date was pushed back, and he suffered from anxiety and depression. Plaintiffs, however, have not presented any argument that defendants' conduct rose to the level of outrageous character required to sustain this claim. Moreover, "to the extent that [Morency] contends [he] suffered emotional distress as a result of the false arrest, [his] claim is encompassed entirely within other available tort remedies and is thus precluded under New York law." *Brewton v. City of New York*, 550 F. Supp. 2d 355, 370 (E.D.N.Y. 2008). As a result, Morency's IIED claim is dismissed.

## CONCLUSION

For the reasons set forth above, The Nassau defendants' motion for summary judgment is granted in part and denied in part and the Lynbrook defendants' motion for summary judgment is granted in part and denied in part.

**SO ORDERED.**

Dated: Central Islip, New York

February 24, 2016

_____/s/_____

Denis R. Hurley

Unites States District Judge